UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY and
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

                         Plaintiffs,

vs.

PRESCRIPTION PARTNERS, LLC,

                         Defendant.

Civil Action No. _____

**Demand for Jury Trial**

## COMPLAINT

Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs"), by their attorneys SMITH & BRINK, P.C., hereby allege as follows:

## I.     INTRODUCTION

1.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 defining and declaring the rights, duties, obligations, and legal relationships by and between Allstate and defendant Prescription Partners, LLC ("Prescription Partners" and/or "defendant").

2.     This action arises from claims submitted to Allstate by Prescription Partners under Michigan's No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*. ("No-Fault Act"), pursuant to Mich. Comp. Laws § 500.3107(1)(a) for personal protection benefits ("PIP benefits").

3.      PIP benefits are payable for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation" arising from a motor vehicle accident.  Mich. Comp. Laws § 500.3107(1)(a).

4.      Allstate seeks a declaration that it is not obligated to pay any claim for PIP benefits submitted to it by Prescription Partners, including pending claims in excess of $81,021.

5.      Allstate further seeks restitution from Prescription Partners in the amount by which Prescription Partners has been unjustly enriched, an amount in excess of $25,085.

6.      Prescription Partners does not provide any products, services, or accommodations relative to an injured person's care.

7.      Prescription Partners is not a healthcare provider and does not in any way treat injured persons.

8.      Instead, Prescription Partners is an information technology company that purchases accounts receivable, or claims, from treating providers who prescribe medication to injured persons.

9.      Prescription Partners pays a reduced amount to the treating/dispensing provider and then seeks to collect the full amount from Allstate under the guise of "PIP benefits."

10.     Prescription Partners's actions in this regard are both not permissible under the clear language of the No-Fault Act and are violative of the purpose and goal of Michigan's No-Fault Act.

11.     By this Complaint, Allstate seeks a declaration that Prescription Partners has no right to submit such claims to Allstate and that Allstate has no obligation to pay claims for PIP benefits made by Prescription Partners.

12. Allstate further seeks restitution of those monies wrongly obtained from Allstate and retained by Prescription Partners.

## II. THE PARTIES

### A. PLAINTIFFS

13. Allstate Insurance Company and Allstate Property & Casualty Insurance Company are wholly-owned indirect subsidiaries of The Allstate Corporation, a corporation duly organized and existing under the laws of the State of Delaware.

14. Allstate Insurance Company and Allstate Property & Casualty Insurance Company have their principal places of business in Northbrook, Illinois

15. At all times relevant to the allegations contained in this Complaint, Allstate Insurance Company and Allstate Property & Casualty Insurance Company were authorized to conduct business in Michigan.

### B. DEFENDANT

16. Prescription Partners, LLC is a limited liability company organized under the laws of the State of Florida.

17. Prescription Partners, LLC's principal place of business is Miramar, Florida.

18. Upon information and belief, Prescription Partners, LLC is a wholly-owned subsidiary of Automated Healthcare Solutions, LLC, which is also organized under the laws of the State of Florida.

19. Automated Healthcare Solution, LLC's principal place of business is Miramar, Florida.

## III. JURISDICTION AND VENUE

20. Jurisdiction over this action is conferred upon this court by 28 U.S.C. § 1332.

3

21.     Allstate Insurance Company and Allstate Property & Casualty Insurance
Company are citizens of the States of Delaware and Illinois for purposes of 28 U.S.C. § 1332.

22.     Prescription Partners is a citizen of the State of Florida.

23.     Further, the amount in controversy, exclusive of interest and costs, exceeds
$75,000, the sum set forth in 28 U.S.C. § 1332.

24.     At all relevant times, Prescription Partners conducted business in the State of
Michigan.

25.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) and (c) whereas the vast
majority of the acts known to Allstate alleged herein were carried out within the Eastern District
of Michigan.

## IV.    **MICHIGAN'S NO-FAULT LAW**

26.     Allstate underwrites automobile insurance in the State of Michigan.

27.     Michigan's No-Fault Act provides for the payment of unlimited medical and
rehabilitative benefits on a first-party payor basis for injured victims of motor vehicle accidents.

28.     Personal protection insurance benefits are payable for "[a]llowable expenses
consisting of all reasonable charges incurred for reasonably necessary products, services and
accommodations for an injured person's care, recovery, or rehabilitation" arising out of a motor
vehicle accident.  Mich. Comp. Laws § 500.3107(1)(a).

29.     "Under [the No-Fault] statutory scheme, an insurer is not liable for any medical
expense to the extent it is not a reasonable charge for the particular product or service, or if the
product or service itself is not reasonably necessary."  Nasser v. Auto Club Ins. Ass'n, 435 Mich.
33, 49 (1990).

30.     A claimant who seeks to hold an insurer liable for No-Fault benefits has the burden of proving that the service claimed is reasonably necessary and that the charge for the service is reasonable.  Nasser, 435 Mich. at 49.

31.     Claims for personal injury benefits under the No-Fault Act are available only if the benefits are "for accidental bodily injury" and only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle . . . ."  Mich. Comp. Laws § 500.3105(1).

32.     Subject to limited exceptions, an insurer must pay each claim for PIP benefits arising out of the motor vehicle accident within thirty (30) days after receiving "reasonable proof of the fact and of the amount of loss sustained."  Mich. Comp. Laws § 500.3142(2).

33.     The Michigan No-Fault Act provides that an insurer "may be allowed by a court an award of a reasonable sum against a claimant as an attorney's fee for the insurer's attorney in defense against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation."  Mich. Comp. Laws § 500.3148(2)

## V.     BACKGROUND ON PRESCRIPTION PARTNERS

34.     Upon information and belief, Prescription Partners is a wholly-owned subsidiary of Automated Healthcare Solutions, LLC ("AHCS").

35.     AHCS and Prescription Partners are self-described healthcare information technology ("IT") companies that provide medication dispensing technology and claims processing services to physicians and medical providers throughout the country, including in Michigan, who dispense medications in office.

36.     The dispensing/treating providers (i.e., the licensed medical professional who actually sees and treats the patient) purchase the medications directly from drug suppliers who

5

buy drugs in bulk from manufacturers and then repackage the drugs in pre-counted doses and into ready-to-dispense containers.

37.     Once the treating provider prescribes and dispenses the medication out of his or her office, Prescription Partners purchases the claim from the provider.

38.     AHCS and Prescription Partners make a "sales pitch" to providers to convince them of the benefits of this arrangement.

39.     The sales pitch includes a list of medications that the provider can dispense in office, including the cost of purchasing the drug to the provider, the average wholesale price (AWP) of the drug, the "guaranteed payment" that the "physician gets paid from AHCS for that script," and the profit to the provider.  *See* Exhibit 1.

40.     The difference between the AWP, which is the amount billed to Allstate, and the "guaranteed payment" to the provider is the profit to Prescription Partners.  Id.

41.     Pursuant to the contract between Prescription Partners and the dispensing provider, Prescription Partners pays the dispensing provider a percentage of what it values the total claim for the medication to be (i.e., the AWP), which is the amount Prescription Partners bills Allstate.

42.     According to Prescription Partners, the exact percentage paid depends on the volume of medications dispensed by the treating provider.

43.     That is, high volume dispensers will receive a greater percentage of the total value of the claim while lower volume dispensing providers receive a lesser percentage.

44.     Upon information and belief, Prescription Partners pays the dispensing provider an amount no greater than seventy percent (70%) of the amount that Prescription Partners ultimately demands from the payor, such as Allstate, as demonstrated in Exhibit 1.

6

45.     Prescription Partners then seeks to collect on the full value of the claim (i.e., the AWP) from insurance companies, such as Allstate, including the thirty percent (30%) or more above and beyond the amount paid to the treating provider who prescribed and dispensed the medication.

46.     Prescription Partners does not purchase, own, handle, or sell prescription medications.

47.     AHCS and Prescription Partners purport to have no involvement and no connection to the drug suppliers/repackagers who do sell the medications to physicians.

48.     In fact, however, AHCS and Prescription Partners have a very close relationship with at least one supplier/repackager: Quality Care Products, LLC ("QCP").

49.     For example, in a letter dated April 15, 2008, AHCS sent a letter to its clients in which it stated that "AHCS/Quality Care Products, Inc. (QCP) is requesting the attached questionnaire to be completed and signed by the practice." Exhibit 2.

50.     The same letter continues, "All questionnaires are to be placed in your confidential file at AHCS/AFP and QCP headquarters and will not be shared with any other entity or individual." Id.

51.     AHCS and QCP also jointly sponsor a golf tournament in Orlando, Florida.

52.     QCP is a drug repackager.

53.     Drug repackagers purchase medication from drug manufacturers and repackage the drugs into smaller amounts that are individually bottled, labeled, and dispensed directly from providers' offices.

54.     QCP helps to inflate the AWP for repackaged drugs, which directly impacts the amount of the claims submitted to insurers like Allstate.

55.      Thus, while Prescription Partners purports to have no involvement in setting the price ultimately charged to Allstate, its relationship with repackaged drug suppliers like QCP contradicts this statement, as QCP undoubtedly is involved in setting the AWP by charging the inflated amounts it does for repackaged drugs.

56.      Prescription Partners uses the AWP when submitting claims to Allstate that contain unreasonable charges, as discussed in detail *infra*.

57.      Prescription Partners is not a pharmacy and does not provide any medication, supply, device, or equipment to the patient.

58.      In fact, Prescription Partners has no interaction with patients whatsoever.

59.      Instead, Prescription Partners is an IT company that enters into contracts with healthcare providers to provide IT and claims processing (i.e., billing) services.

60.      Prescription Partners asserts that treating providers assign to it the right to bill insurers, like Allstate, for the dispensed medications.

61.      However, Prescription Partners has never produced an assignment from the treating provider to itself, despite numerous requests for the same from Allstate.

62.      Nor has Prescription Partners ever produced an assignment to it from the insured/patient.

63.      In fact, there is no indication that any injured person has ever heard of Prescription Partners nor that Prescription Partners played any role in the injured person's treatment.

## VI.      THE SERVICES RENDERED BY PRESCRIPTION PARTNERS DO NOT CONSTITUTE AN "ALLOWABLE EXPENSE"

64.      A person injured in a motor vehicle accident is entitled to a variety of PIP benefits under the Michigan No-Fault Act.

8

65.     The Michigan Supreme Court has recognized four general categories of PIP benefits: "survivor's loss, allowable expenses, work loss, and replacement services." Johnson v. Recca, 492 Mich. 169, 173 (2012).

66.     The sole category of PIP benefits sought from Allstate by Prescription Partners (and, therefore, the sole category at issue in this Complaint) is allowable expenses.

67.     "Allowable expenses" consist "of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

68.     The Michigan Supreme Court has held that "the plain language of this provision [Mich. Comp. Laws § 500.3107(1)(a)] imposes four requirements that a PIP claimant must prove before recovering benefits for allowable expenses: (1) the expense must be for an injured person's care, recovery, or rehabilitation, (2) the expense must be reasonably necessary, (3) the expense must be incurred, and (4) the charge must be reasonable." Douglas v. Allstate Ins. Co., 492 Mich. 241, 259 (2012).

69.     The burden of proving that these requirements are met lies with the party seeking PIP benefits. Nasser, 435 Mich. at 49.

70.     For the reasons discussed herein, Prescription Partners cannot demonstrate a single one of these four requirements.

71.     The inability to prove even one of these prerequisites is fatal to Prescription Partners's claim for PIP benefits.

72.     As such, Prescription Partners is not entitled to any reimbursement from Allstate and Allstate is entitled to recover those payments made to Prescription Partners prior to the discovery of Prescription Partners's ineligibility to seek and receive PIP benefits.

9

A.   **EXPENSE IS NOT "FOR AN INJURED PERSON'S CARE, RECOVERY, OR REHABILITATION"**

73.     PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."  Mich. Comp. Laws § 500.3107(1)(a) (emphasis added).

74.     Michigan courts have held that to be considered an allowable expense, the service "must be related to the insured's injuries."  Douglas, 492 Mich. at 260.

75.     Indeed, the use of the word "for" in the statute "implies a causal connection."  Griffith v. State Farm Mut. Auto. Ins. Co., 472 Mich. 521, 531 (2005).

76.     "Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident."  Id.

77.     The Griffith court also held that the term "care" as used in Mich. Comp. Laws § 500.3107(1)(a) is limited "to expenses for those products, services, or accommodations whose provision is necessitated by the injury sustained in the motor vehicle accident."  472 Mich. at 535.

78.     The services provided by Prescription Partners consist solely of IT and claims processing (i.e., billing) services that are rendered to medical providers only.

79.     Prescription Partners has not supplied any product, service, or accommodation to the injured person.

80.     Indeed, there is no indication that any Allstate insured is even aware of the existence of Prescription Partners, let alone that Prescription Partners has rendered a service relative to the insured's care, recovery, or rehabilitation.

81.     As discussed *supra*, Prescription Partners adamantly maintains that it is not a drug repackager and does not purchase, own, handle, sell, prescribe, or dispense prescription medications.

82.     Instead, Prescription Partners purchases claims from medical professionals after the medical professional has dispensed the repackaged medication to the injured person.

83.     As Prescription Partners's ability to assert a claim against Allstate only arises after the treating provider has dispensed the medication without any involvement from Prescription Partners, Prescription Partners necessarily cannot render a service to the injured person himself or herself.

84.     Moreover, the "services" provided by Prescription Partners (namely, IT and claims processing) are not "necessitated by the injury sustained in the motor vehicle accident." Griffith, 472 Mich. at 535.

85.     Indeed, while the medication prescribed and dispensed by the treating provider may have been necessitated by the insured's accident injury, the IT support and software provided by Prescription Partners are not.

86.     Likewise, Prescription Partners's purchase of the No-Fault claim from the treating provider is not "necessitated" by the insured's injury, but rather is done as part of Prescription Partners's business model and business agreement with the treating provider.

87.     While the treating providers and Prescription Partners are free to enter into business contracts, Allstate is not bound by those contracts to pay PIP benefits to Prescription Partners that it is not obligated to pay under the clear language of Mich. Comp. Laws § 500.3107(1)(a).

### B.    EXPENSE IS NOT REASONABLY NECESSARY

88.    Whether an allowable expense is "reasonably necessary," as required by Mich.
Comp. Laws § 500.3107(1)(a), "must be assessed by using an objective standard." Krohn v.
Home-Owners Ins. Co., 490 Mich. 145, 163 (2011).

89.    Thus, a service, product, or accommodation must be both "(1) objectively
reasonable and (2) necessary for an insured's care, recovery, or rehabilitation." Id.

90.    By the within Complaint, Allstate is not challenging as a general matter that its
insureds were injured in a motor vehicle accident and that each needed medication relative to
injuries sustained in those accidents (though Allstate does reserve its right to challenge any of
these facts and to assert any other defenses and limitations available to it on a claim-by-claim
basis).

91.    Rather, Allstate's focus in this action is only on the "services" provided by
Prescription Partners: IT and claims processing services.

92.    Within the context of this case, IT and claims processing have nothing to do with
the insured and, therefore, cannot be necessary to the care, recovery, or rehabilitation of a person
injured in a motor vehicle accident.

93.    At most, the IT and claims processing services can be deemed beneficial for the
dispensing provider.

94.    Michigan's No-Fault Act is clear that "allowable expenses" must be for
"reasonably necessary products, services and accommodations for an injured person's care,
recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a) (emphasis added).

95.    The IT used by a healthcare provider (here, the IT provided by Prescription
Partners) does not constitute a product, service, or accommodation related to the care of the

12

injured person, who is unlikely to be aware of the IT configuration of his or her doctor when receiving medication.

96.     Likewise, the healthcare provider's cost in collecting payment from insurers for the services he or she provides to an injured person is not for the care, recovery, or rehabilitation of the injured person, but instead is a cost of doing business for the provider that is not to be borne by the insurer under Michigan's No-Fault Act.

97.     As Prescription Partners's IT and claims processing services are not necessary to the care, recovery, or rehabilitation of an injured person, and in fact bear no relation to the care of an injured person, they are not "reasonably necessary" and, thus, cannot qualify as an "allowable expense" under the No-Fault Act.

### C.     EXPENSE IS NOT INCURRED

98.     The statute also limits allowable expenses to "charges incurred."  Mich. Comp. Laws § 500.3107(1)(a).

99.     "That is, even if a claimant can show that services were for his care and were reasonably necessary, an insurer 'is not obligated to pay any amount except upon submission of evidence that services were <u>actually incurred</u> and of the <u>actual cost expended</u>.'"  <u>Douglas</u>, 492 Mich. at 266-267, quoting <u>Manley v. Detroit Auto. Inter-Insurance Exchange</u>, 425 Mich. 140, 159 (1986) (emphasis original).

100.     The Michigan Supreme Court has defined "incur," within the context of Mich. Comp. Laws § 500.3107, as "to become liable or subject to, [especially] because of one's own actions."  <u>Proudfoot v. State Farm Mut. Ins. Co.</u>, 469 Mich. 476, 484 (2003) (bracket original).

101.     "[T]he definition of 'incur' adopted in <u>Proudfoot</u> requires a legal or equitable obligation to pay."  <u>Burris v. Allstate Ins. Co.</u>, 480 Mich. 1081, 1084 (2008).

102.     Upon information and belief, under Prescription Partners's business model, the injured person (i.e., Allstate's insured) is not and never becomes liable to pay Prescription Partners.

103.     In fact, there is no evidence to suggest that Allstate's insured has any knowledge of the existence of Prescription Partners or what it does, let alone that he or she may owe money to Prescription Partners.

104.     There is no contract for products and services between the insured and Prescription Partners.

105.     Nor, upon information and belief, is the insured billed by Prescription Partners.

106.     Instead, Prescription Partners buys claims from the dispensing/treating provider.

107.     As the treating provider is paid by Prescription Partners, the treating provider too does not become liable to pay Prescription Partners.

108.     Thus, no party involved in actually treating the injured person ever becomes liable for any service rendered to the injured person relative to prescription medication.

109.     Put another way, Prescription Partners has no expectation of payment from the Allstate insured or the treating/dispensing provider.

110.     While Prescription Partners may assert an expectation of payment from Allstate for the services it rendered, this expectation is not related to the provision of services for the care, recovery, or rehabilitation of a person injured in a motor vehicle accident.

111.     Instead, the services for which Prescription Partners seeks payment from Allstate are the provision of IT and claims processing services, neither of which is related to the care of an injured person.

112.    This is especially true of the thirty percent (30%) or more of the charge demanded of Allstate by Prescription Partners above and beyond the amount paid to the dispensing provider by Prescription Partners.

113.    Allstate does not submit that its insured believed it was receiving medication for free.

114.    Nor does Allstate challenge that in general an insured or licensed medical provider would be eligible to seek PIP benefits related to medication that was necessary to the care, recovery, or rehabilitation of a person injured in a motor vehicle accident (subject to any applicable limitations and defenses).

115.    However, the insured is not submitting a claim to Allstate for PIP benefits related to the dispensed medications at issue in this Complaint.

116.    Nor is the treating provider submitting such a claim to Allstate.

117.    Instead, a third party (Prescription Partners) that has no relationship with the injured party whatsoever is seeking payment from Allstate for medication that it did not supply, did not prescribe, and did not dispense.

118.    The inability of any insured to furnish evidence that he or she incurred charges for the IT and claims processing services of Prescription Partners means that Allstate is not liable under the No-Fault Act to pay any claim submitted by Prescription Partners for those services.

**D.**    **CHARGE IS NOT REASONABLE**

119.    For the multitude of reasons discussed herein, Prescription Partners is not permitted to submit a claim for PIP benefits to Allstate at all.

15

120.    However, *assuming arguendo* that Prescription Partners is permitted to bring and/or maintain a PIP claim against Allstate, the claim must only be for "reasonable" charges under Mich. Comp. Laws § 500.3107(1)(a).

121.    Michigan courts have stated explicitly that "medical care providers are prohibited from charging more than a reasonable fee." McGill v. Auto. Ass'n, 207 Mich. App. 402, 405 (1994).

122.    Prescription Partners, of course, is not a "medical care provider."

123.    Nor does Prescription Partners charge a reasonable fee to Allstate.

124.    Instead, for all claims submitted by Prescription Partners to Allstate under Michigan's No-Fault Act for all dates of service through December 25, 2012 (the vast majority of the claims at issue in this Complaint, as set out in Exhibit 3 hereto), Prescription Partners appears to have charged Allstate the national average wholesale price (AWP) for repackaged drugs.

125.    The repackaged AWP for drugs is substantially higher than the amount charged by local Michigan pharmacies from which insureds can also receive prescription medication.

126.    The repackaged AWP is also significantly higher than the original drug manufacturer AWP.

127.    As their names suggest, the repackaged AWP is the average wholesale price for drugs that have been repackaged and distributed by someone other than the original manufacturer of the drug, while the original manufacturer AWP is the average wholesale price for the drugs distributed by the original manufacturer.

128.     AWP of any type is subject to significant inflation and does not take into account volume discounts, kickbacks, and other reductions given to the drug purchaser by the repackager and/or the original manufacturer.

129.     For this reason, the Centers for Medicare & Medicaid Services does not use any form of AWP in determining the fee that can be charged under Medicare Part B, but rather uses average sales price, which is designed to take into account the rebates and discounts given to purchasers.

130.     Even comparing only repackaged AWP with original manufacturer AWP, it is clear that the charges submitted by Prescription Partners using the former are grossly inflated and do not constitute a "reasonable" charge.

131.     For example, the repackaged AWP for 90 units of Carisoprodol 350mg is $594.55.

132.     The original manufacturer AWP for the same dosage and same number of units of the same drug is $50.97.

133.     The repackaged AWP for 120 units of Hydrocodone/Acetaminophen 10-325mg is $229.08 while the original manufacturer AWP is $47.88.

134.     The repackaged AWP for 270 Licoderm 5% patches is $4,213.97 while the original manufacturer AWP is $2,555.20.

135.     Annexed hereto at Exhibit 4 is a list setting out the repackaged AWP and the original manufacturer AWP for several of the drugs for which Allstate is frequently charged by Prescription Partners.  As shown in Exhibit 4, Prescription Partners billed the higher repackaged AWP when submitting claims to Allstate.

136.    The Michigan Legislature is aware of the gross discrepancy between the repackaged AWP and the original manufacturer AWP and updated the workers' compensation fee schedule to permit reimbursement of ninety percent (90%) of the manufacturer's AWP (plus a dispensing fee), effective December 26, 2012.  Mich. Admin. Code R. 418.101003a (2012).

137.    Prior to the revised R. 418.101003a, the workers' compensation fee schedule required reimbursement at ninety percent (90%) of the repackaged AWP.

138.    After this regulation went into effect, Prescription Partners began charging Allstate the original manufacturer AWP.

139.    While the original manufacturer AWP is still not a reasonable fee in many instances, as it is often significantly higher than the cost of the same drug at a local pharmacy, Prescription Partners's recent decision to use the lesser original manufacturer AWP shows that all claims demanding payment at the higher repackaged AWP are not reasonable.

140.    Similarly, the change in the workers' compensation law tying the fee for medication to the original manufacturer AWP demonstrates that the repackaged AWP does not represent a reasonable charge for medication.

141.    As noted above, almost all of the claims at issue in this Complaint demand payment from Allstate at the repackaged AWP.

142.    Allstate, in keeping with its "obligation to determine the reasonableness of a provider's charges," Bronson Methodist Hosp. v. Home-Owners Ins. Co., 295 Mich. App. 431, 450 (2012), has reviewed the claims from Prescription Partners and determined that they are unreasonable.

143.    As part of its review, Allstate requested the cost of the drugs to Prescription Partners and/or the dispensing provider, as it is permitted to do under Mich. Comp. Laws § 500.3158(2), but to no avail.

144.    However, the drug list included in the "sales pitch" of AHCS, Prescription Partners's parent company, is telling as to the true cost of the drugs dispensed by the provider and the markup on the claim submitted to Allstate.  *See* Exhibit 1.

145.    For example, the first drug on the list created by AHCS is Meloxicam (Mobic) 15mg.  Id.

146.    For 60 units, the cost of the drug to the provider is $8.33.  Id.

147.    The repacked AWP of the drug is $437.48.  Id.

148.    Thus, the profit to the provider for dispensing this strength and 60 units of Meloxicam is $297.91.  Id.

149.    The profit to Prescription Partners, which did nothing except buy the account receivable from the dispensing provider and bill Allstate, is $131.24.  Id.

150.    The promotional materials distributed by AHCS/Prescription Partners demonstrate the extreme discrepancy between the cost of the drug to the provider and the AWP amount charged to Allstate.  Id.

151.    This gross discrepancy alone demonstrates the unreasonableness of the charges submitted to Allstate for the drugs at issue in this Complaint.

152.    For all of these reasons – use of AWP, especially repackaged AWP; failure to provide information regarding the cost of treatment of the injured person; and the list created by AHCS/Prescription Partners showing the true cost of the drugs to the provider – Prescription Partners has not met its burden of proving that its charges were reasonable.

153.     Allstate reiterates its primary argument that the services provided by Prescription Partners do not constitute an "allowable expense" within the meaning of the Michigan No-Fault Act, meaning that Prescription Partners has no basis to submit a claim for PIP benefits in any amount to Allstate.

154.     However, even if this Court should determine that Prescription Partners is eligible to collect Michigan PIP benefits, the charges for those benefits must be reasonable, which they are not.

155.     As such, Allstate is not obligated to pay the pending claims submitted by Prescription Partners, as they do not contain reasonable charges.  Nasser, 435 Mich. at 49 ("an insurer is not liable for any medical expense to the extent that it is not a reasonable charge for a particular product or service").

## VII.    PRESCRIPTION PARTNERS DOES NOT LAWFULLY RENDER TREATMENT

156.     "A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for accidental bodily injury covered by personal protection insurance, . . . may charge a reasonable amount for the products, services and accommodations rendered."  Mich. Comp. Laws § 500.3157.

157.     Prescription Partners, by its own admission, does not render treatment to injured persons.

158.     Indeed, Prescription Partners has no interaction or connection with the injured parties whatsoever.

159.     Instead, Prescription Partners has a business relationship with the treating provider pursuant to which it provides IT and claims processing services to the provider.

160.    As Prescription Partners has not "lawfully render[ed] treatment to an injured person," it cannot submit claims for PIP benefits.

161.    The language of Mich. Comp. Laws § 500.3157 is clear about who can submit a charge for PIP medical benefits: a "physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person."

162.    Prescription Partners does not come within the ambit of § 500.3157 and, thus, has no standing to submit claims for PIP benefits to Allstate.

163.    Michigan law is not settled as to whether the phrase "lawfully rendering treatment" requires that the individual providing treatment, the institution providing treatment, or both must be properly licensed to seek payment for the provision of services for an injured person's care, recovery, or rehabilitation.  *Compare, e.g.,* The Healing Place at North Oakland Med. Center v. Allstate Ins. Co., 277 Mich. App. 51, 59 (2007) ("[i]f both the individual and the institution were required to be licensed and either was not, the 'lawfully render[ed]' requirement would be unsatisfied") *and* Cherry v. State Farm Mut. Ins. Co., 195 Mich. App. 316, 320 (1992) ("only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit") *with* Hofmann v. Auto Club Ins. Ass'n, 211 Mich. App. 55, 66 (1995) ("the focus of § 3107 is on whether a given product or service is 'reasonably necessary . . . for an injured person's care, recovery, or rehabilitation,' not whether it was provided by a licensed health-care provider").

164.    However, what is clear from the case law, including all of the cases cited in the preceding paragraph, is that Mich. Comp. Laws § 500.3157 requires that a service be rendered "to an injured person for an accidental bodily injury covered by personal protection insurance."

165.     Personal protection insurance benefits are payable only for services related to the "care, recovery, or rehabilitation" of a person injured in a motor vehicle accident.  Mich. Comp. Laws § 500.3107(1)(a).

166.     The only service provided by Prescription Partners is rendered to the dispensing provider, not the injured person, and consists of IT and claims processing, neither of which is related to the care, recovery, or rehabilitation of an Allstate insured in the context of this Complaint.

167.     Thus, Prescription Partners has not rendered any treatment, lawful or otherwise, within the meaning of Mich. Comp. Laws § 500.3157.

168.     As such, Prescription Partners has no standing to submit a claim for PIP medical benefits to Allstate.

## VIII.   PRESCRIPTION PARTNERS IS NOT A PERMISSIBLE ASSIGNEE OR AN INTENDED BENEFICIARY OF PIP BENEFITS

169.     Michigan's No-Fault Act does not expressly permit anyone other than the insured to receive benefits thereunder.

170.     It is only by case law that healthcare providers are permitted to be assignees of an insured's PIP benefits.

171.     The limited case law in existence regarding the assignment of PIP medical benefits is clear that the assignment is from the insured to the healthcare provider.  *See* Lakeland Neurocare Centers v. State Farm Mut. Auto. Ins. Co., 250 Mich. App. 35, 39 (2002) (court upheld right of healthcare providers to seek reimbursement under No-Fault Act and commented that "it is common practice for insurers to directly reimburse health care providers for services rendered to their insureds"); Professional Rehabilitation Assocs. v. State Farm Mut. Auto. Ins. Co., 228 Mich. App. 167, 172-174 (1998) (court upheld assignment of past and presently due

No-Fault benefits to provider of medical and rehabilitative services); <u>Munson Medical Center v.</u> <u>Auto Club Ins. Ass'n</u>, 218 Mich. App. 375, 378 (1996) ("Under Michigan's no-fault act, . . . when a person is injured in an automobile-related accident, a hospital that provides medical care is to be reimbursed by the injured person's no-fault insurance company"); <u>Accident Victims</u> <u>Home Health Care v. Allstate Ins. Co.</u>, 2006 Mich. App. LEXIS 1791, *3 ("our Court has recognized the validity of an insured's assignment of rights to past due and presently due no-fault benefits to a healthcare provider").

172.    Prescription Partners is neither a person injured in a motor vehicle accident nor a healthcare provider who treats persons injured in motor vehicle accidents.

173.    Prescription Partners does not manufacture or supply medical devices or medication to injured persons.

174.    Instead, Prescription Partners is an IT company that buys claims from healthcare providers after treatment (i.e., the dispensing of medication) to the insured is completed.

175.    As such, Prescription Partners is not a proper assignee of PIP benefits and is not an intended beneficiary of No-Fault benefits.

176.    Here, there are multiple layers between the No-Fault beneficiary expressly contemplated by the No-Fault Act (the insured) and the entity seeking PIP benefits (Prescription Partners).

177.    The connection is too attenuated to permit Prescription Partners to assert claims for PIP benefits against Allstate.

178.    PIP benefits are available for the purpose of providing prompt payment for necessary medical expenses incurred by a person injured in a motor vehicle accident.[1] *See* Mich. Comp. Laws § 500.3107(1)(a).

179.    Prescription Partners, however, does not provide any service that is medical in nature (nor could it, as Prescription Partners is not a healthcare provider).

180.    Instead, Allstate is being asked to pay Prescription Partners, an IT company, an amount thirty percent (30%) or more above and beyond any amount paid to the insured or the treating provider.

181.    Any PIP benefits payment to Prescription Partners, especially the thirty percent (30%) or more surcharge, is too attenuated from patient medical care, which is the express purpose for which PIP medical benefits exist under Michigan's No-Fault Act.

182.    As such, Prescription Partners is not an eligible assignee of PIP benefits and cannot seek such benefits from Allstate.

183.    The escalating costs of No-Fault insurance in Michigan are well documented.

184.    Likewise, the prevalence of abuse in Michigan's No-Fault system is wide-ranging.

185.    "The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." Professional Rehabilitation Assocs., 228 Mich. App. at 171.

186.    Consistent with this goal, and as a matter of public policy, companies that are entirely divorced from the provision of No-Fault benefits should not be permitted to exploit the No-Fault system for their personal gain.

187.    Yet, this is exactly what Prescription Partners does.

---

[1] PIP benefits are also available to pay for other categories of benefits not at issue in this Complaint.

188.     Moreover, Prescription Partners is forthcoming that it takes at least thirty percent (30%) of the payment from insurers like Allstate that is pure profit to it and is above and beyond the amount paid to the treating provider.

189.     It is not tenable that Michigan's No-Fault Act was designed to permit such practices.

190.     Accordingly, Prescription Partners is not an intended beneficiary of the No-Fault Act and has no standing to submit claims for PIP benefits to Allstate.

## IX.   PRESCRIPTION PARTNERS RECEIVED PAYMENTS FROM ALLSTATE TO WHICH IT WAS NOT ENTITLED AND WHICH WOULD BE UNJUST FOR IT TO RETAIN

191.     For the reasons stated above, it would be unjust to permit Prescription Partners to retain those monies paid to it by Allstate before Allstate discovered the true nature of Prescription Partners and its practices.

192.     Allstate is not obligated to pay any PIP benefits to Prescription Partners for services that do not constitute an allowable expense, that were not lawfully rendered by a healthcare provider, and/or that were done by any party that lacked standing to seek such benefits.

193.     As discussed above, the claims submitted by Prescription Partners are not allowable expenses, are not for lawfully rendered treatment, and are submitted by a party without standing and which is not an intended beneficiary of PIP medical benefits under Michigan's No-Fault Act.

194.     For all of these reasons, Allstate is not and never was obligated to pay any claims submitted by Prescription Partners, including those claims identified in Exhibit 5 hereto, which

sets out each payment made by Allstate to Prescription Partners by amount, check number, date, and patient claim number and initials.

195.    Allstate's claim for compensatory damages, as set out in Exhibit 5, does not include payment made with respect to any assigned claim facility claimant.

196.    Allstate is entitled to the return of all monies paid to Prescription Partners, as Prescription Partners never had standing to submit claims to Allstate for PIP benefits in the first place.

197.    It would not be unjust to require Prescription Partners to return the monies it wrongfully obtained from Allstate.

198.    To the contrary, the return of these monies would be in keeping with the purpose of the No-Fault Act, which is designed to reimburse promptly persons injured in motor vehicle accidents and treating healthcare providers for the purpose of reducing the costs of automobile insurance to Michigan drivers.

199.    Allowing companies like Prescription Partners to take advantage of the system and collect unadulterated profit without providing a No-Fault compensable service in return should not be tolerated.

200.    Accordingly, it would be just and equitable to require Prescription Partners to return all monies paid to it by Allstate, including those payments identified in Exhibit 5.

## X.    CAUSES OF ACTION

### COUNT I
### PAYMENT UNDER MISTAKE OF FACT
**Against Prescription Partners, LLC**

201.    Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 200 above as if fully set forth herein.

26

202.     Allstate paid the amount described herein under a misunderstanding, misapprehension, error, fault, or ignorance of material facts, namely, that Prescription Partners was eligible to submit claims for PIP benefits and did so for lawfully rendered medical treatment and, therefore, was eligible to receive compensation under Michigan's No-Fault Act.

203.     Allstate sustained damages by paying under a mistake of fact the claims submitted by Prescription Partners.

204.     Prescription Partners would be unjustly enriched if permitted to retain the payments made to it by Allstate under a mistake of fact.

205.     Allstate is entitled to restitution from Prescription Partners for all monies paid to and/or received by it from Allstate.

### COUNT II
### UNJUST ENRICHMENT
### Against Prescription Partners, LLC

206.     Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 200 above as if fully set forth herein.

207.     Allstate paid monies in response to the claims submitted by Prescription Partners in reasonable belief that it was legally obligated to make such payments based upon the claims submitted by Prescription Partners that purported to be for allowable expenses under the Michigan No-Fault Act.

208.     Allstate's payments constitute a benefit which Prescription Partners intentionally sought and voluntarily accepted.

209.     Prescription Partners wrongfully obtained payments from Allstate through the submission of claims that were not compensable under the No-Fault Act.

210.   Prescription Partners has been unjustly enriched by receipt of these wrongfully-obtained payments from Allstate.

211.   Prescription Partners's retention of these payments would violate fundamental principles of justice, equity, and good conscience.

## COUNT III
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### Against Prescription Partners, LLC

212.   Allstate re-alleges, re-pleads, and incorporates by reference paragraphs 1 through 200 above as if fully set forth herein.

213.   Prescription Partners submits claims to Allstate for PIP benefits that do not constitute an "allowable expense" within the meaning of Mich. Comp. Laws § 500.3107(1)(a).

214.   Prescription Partners submits claims for PIP benefits for services that are not "for an injured person's care, recovery, or rehabilitation," as required by Mich. Comp. Laws § 500.3107(1)(a).

215.   Prescription Partners submits claims for PIP benefits related to services that are not reasonably "necessary."

216.   Prescription Partners submits claims for PIP benefits for services that are not "incurred" within the meaning of the No-Fault Act.

217.   Prescription Partners submits claims for PIP benefits that do not constitute "reasonable" charges.

218.   Prescription Partners does not "lawfully render[] treatment to an injured person," as it is not a healthcare provider and has no interaction with patients whatsoever.

219.   Prescription Partners is not a proper assignee of PIP benefits and is not a beneficiary of such benefits contemplated by the No-Fault Act.

28

220.    For each and all of these reasons, Prescription Partners has no right to bring and cannot sustain a claim for PIP benefits against Allstate.

221.    Allstate has no obligation to pay claims for PIP benefits submitted by Prescription Partners.

222.    Prescription Partners continues to submit claims under the No-Fault Act for non-allowable expenses, services that do not constitute lawfully rendered treatment, and which it has no standing to submit, and other claims remain pending with Allstate.

223.    Prescription Partners will continue to bill Allstate for No-Fault benefit payments absent a declaration by this Court that it has no standing to do so and that Allstate has no obligation to pay any pending, previously-denied, and/or any future No-Fault claim submitted by Prescription Partners.

224.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the services provided by Prescription Partners do not constitute an "allowable expense" within the meaning of Mich. Comp. Laws § 500.3107(1)(a) and, therefore, such services are not compensable under Michigan's No-Fault Act.

225.    Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Prescription Partners is not a healthcare provider and does not lawfully render treatment to persons injured in motor vehicle accidents and, therefore, cannot submit claims to Allstate under Michigan's No-Fault Act.

226.    Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Prescription Partners has no standing to receive assignments of PIP benefits under the No-Fault Act.

227.    Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Prescription Partners is not an intended beneficiary of PIP benefits under the No-Fault Act.

228.    As such, Allstate further requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Prescription Partners has no standing to submit, pursue, or receive assigned No-Fault benefits from Allstate.

229.    Finally, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Allstate has no obligation to pay any pending, previously-denied, and/or any future No-Fault claim submitted by Prescription Partners.

## XI.    DEMAND FOR RELIEF

WHEREFORE, plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company respectfully pray that judgment enter in their favor as follows:

### COUNT I
### PAYMENT UNDER MISTAKE OF FACT
### Against Prescription Partners, LLC

(a)    AWARD Allstate its actual damages against the defendant in an amount to be determined at trial; and

(b)    GRANT all other relief this Court deems just and appropriate.

### COUNT II
### UNJUST ENRICHMENT
### Against Prescription Partners, LLC

(a)    AWARD Allstate its actual and consequential damages against the defendant in an amount to be determined at trial; and

(b)    GRANT all other relief this Court deems just and appropriate.

30

<u>COUNT III</u>
**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**
**Against Prescription Partners, LLC**

(a)     DECLARE that the services provided by Prescription Partners, LLC do not

constitute an "allowable expense" within the meaning of Mich. Comp. Laws §

500.3107(1)(a) and, therefore, such services are not compensable under

Michigan's No-Fault Act.

(b)     DECLARE that Prescription Partners, LLC is not a healthcare provider and does

not lawfully render treatment to persons injured in motor vehicle accidents and,

therefore, cannot submit claims to Allstate under Michigan's No-Fault Act.

(c)     DECLARE that Prescription Partners, LLC has no standing to receive

assignments of PIP benefits under the No-Fault Act.

(d)     DECLARE that Prescription Partners, LLC is not an intended beneficiary of PIP

benefits under the No-Fault Act.

(e)     DECLARE that Prescription Partners, LLC has no standing to submit, pursue, or

receive assigned No-Fault benefits from Allstate.

(f)     DECLARE that Allstate Insurance Company and Allstate Property & Casualty

Insurance Company have no obligation to pay any pending, previously-denied,

and/or any future No-Fault claim submitted by Prescription Partners, LLC.

## XII.   <u>JURY TRIAL DEMAND</u>

Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance

Company hereby demand a trial by jury on all claims.

Respectfully submitted,

SMITH & BRINK, P.C.

*/s/ Richard D. King, Jr.*
_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
350 Granite St., Suite 2303
Braintree, MA 02184
(617) 770-2214

*Attorneys for Plaintiffs*
*Allstate Insurance Company and*
*Allstate Property & Casualty*
*Insurance Company*

Dated:  July 17, 2013